**MOUTON LAW**
STACEY Y. MOUTON (SB# 324959)
Stacey@mouton.law
2150 Comstock St. #710754
San Diego, California 92111
Telephone: (760) 927-0647

Attorney for Plaintiff
SCOTT RICKES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT RICKES, an individual, on behalf of himself, all others similarly situated, and all other aggrieved employees,<br><br>Plaintiffs,<br><br>vs.<br><br>THERMO FISHER SCIENTIFIC INC., a Delaware corporation, and DOES 1-20, inclusive.<br><br>Defendants. | **CASE NO: 25-CV-00690-GPC-JLB**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: July 18, 2025<br>Time: 1:30 p.m.<br><br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 5

II. BRIEF FACTUAL BACKGROUND ..... 5

III. THERMO FISHER FAILED TO CARRY ITS BURDEN OF PROVING MUTUAL CONSENT TO ARBITRATE ..... 7

A. Thermo Fisher's Failure To Secure Rickes's Acknowledgment Of Receipt Raises A Presumption Its Arbitration Agreement Was Never Delivered. ..... 8

B. Thermo Fisher Cannot Use Rickes's Silence As Proof He Accepted Their Offer To Arbitrate As It Has No Evidence He Received Or Reviewed That Offer. ..... 9

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bayer v. Neiman Marcus Holdings, Inc.*, 582 F. App'x 711 (9th Cir. 2014) ........ 8, 9

*Blaustein v. Burton*, 9 Cal. App. 3d 161 (1970) ........ 8

*Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) ........ 13

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) ........ 7

*Craig v. Brown & Root*, 84 Cal. App. 4th 416 (2000) ........ 13

*Fleming v. Oliphant Fin., LLC*, 88 Cal. App. 5th 13 (2023) ........ 7, 13

*Gaines v. AT&T*, 424 F. Supp. 3d 1004 (S.D. Cal. 2019) ........ *passim*

*Hermosillo v. Davey Tree Surgery Co.*, 2018 U.S. Dist. LEXIS 117426 (N.D. Cal. July 13, 2018) ........ 11

*Knepper v. Ogletree*, 2019 U.S. Dist. LEXIS 4980 (N.D. Cal. Jan. 9, 2019) ........ 13

*Leslie v. Brown Bros., Inc.*, 208 Cal. 606 (1929) ........ 9

*Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017) ........ 7, 8, 9, 12

*Pearson v. P.F. Chang's China Bistro*, 2015 U.S. Dist. LEXIS 184157 (S.D. Cal. Feb. 23, 2025) ........ 8–9

*Pliszka v. Axos Bank*, 2024 U.S. Dist. LEXIS 165666 (S.D. Cal. Sep. 13, 2024) ........ 12

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 8

*Shulak v. Guaranteed Rate, Inc.*,
2024 U.S. Dist. LEXIS 184230 (C.D. Cal. Apr. 10, 2024) .......... 13

*Sifuentes v. Dropbox, Inc.*,
2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022) .......... 12

**STATUTES**

Cal. Civ. Code
§ 1550 .......... 7
§ 1619 .......... 8
§ 1621 .......... 8

## I. INTRODUCTION

Arbitration is a matter of consent. Not coercion. Yet Thermo Fisher Scientific seeks to force Scott Rickes into arbitration because he did not opt-out of an arbitration agreement it admits he never saw, reviewed, or acknowledged. That is precisely the kind of forced arbitration California courts reject. Indeed, as the Hon. Gonzalo P. Curiel explained in *Gaines v. AT&T*,[1] silence and inaction cannot evince consent to an opt-out agreement of which an employee never acknowledged receipt. The same reasoning applies here. Without evidence of notice, Rickes's silence means nothing. Thermo Fisher cannot conjure consent from a void. No notice means no contract. No contract means no arbitration. The motion must be denied.

## II. BRIEF FACTUAL BACKGROUND

Rickes worked for Thermo Fisher from October 2012 until August 21, 2023.[2] According to Thermo Fisher, it rolled out a Mutual Dispute Resolution Agreement ("MDRA" or "Agreement") program for its employees in 2019; presenting the MDRA "through a notice email" containing a link to the Agreement.[3] Clicking that link launched "a new window containing the full contents of the MDRA for review and provided a mechanism for electronically acknowledging the MDRA."[4] Thermo Fisher's system automatically recorded when an employee (a) clicked that link and (b) completed the acknowledgment form.[5]

Program participation was not mandatory. Rather, employees had 45 days after Thermo Fisher sent the notice e-mail to opt-out.[6] Completing the

---

[1] 424 F. Supp. 3d 1004, 1011–13 (S.D. Cal. 2019).

[2] ECF No. 8-4, ¶ 3 ("Based on information I can readily access in Thermo Fisher's human resources management software, Mr. Rickes worked for Thermo Fisher from October 8, 2012, to August 21, 2023.").

[3] *Id.*, ¶¶ 5, 10–11; ECF No. 8-6.

[4] ECF No. 8-4, ¶ 5.

[5] *Id.*

[6] ECF No. 8-6, at 3.

acknowledgment form was thus a critical component of the program, as the notice email made clear—acknowledgment was the only way Thermo Fisher would know if an employee was "making the decision regarding participating . . . knowingly and voluntarily":[7]

> After reviewing, you will be prompted to acknowledge that you have read the Agreement. It is important to acknowledge that you have reviewed the Agreement so that we know you are making the decision regarding participating or not participating (i.e. opting out) knowingly and voluntarily. You will be required to make the decision

Thermo Fisher contends it sent Rickes the notice email on June 14, 2019.[8] Rickes does not recall ever receiving or reviewing that email.[9] And, as Thermo Fisher admits, Rickes neither reviewed nor acknowledged the Agreement linked to that email.[10] Thermo Fisher asserts that it sent him an additional three reminder emails because of his inaction.[11] Again, Rickes does not recall receiving or reviewing those emails.[12] Again, Thermo Fisher admits Rickes neither reviewed nor acknowledged the Agreement linked to any of them.[13]

Since Rickes never saw the Agreement or any of the e-mails Thermo Fisher asserts it sent him, he knew nothing about the MDRA Program, or the opt-out procedure that Thermo Fisher unilaterally dictated he must follow to avoid waiving his right to a jury trial.[14] The opt-out deadline thus passed without Rickes taking

---

[7] ECF No. 8-6, at 3 (highlighting added).

[8] ECF No. 8-4, ¶¶ 9–10.

[9] Declaration of Scott Rickes in Support of Opposition to Motion to Compel Arbitration ("Rickes Decl."), ¶ 3.

[10] *See* ECF No. 8-4, ¶ 13 ("Mr. Rickes did not take action to review and acknowledge the MDRA in response to the notice email dated June 14, 2019.").

[11] *Id.*, ¶ 6.

[12] Rickes Decl., ¶ 3.

[13] *See* ECF No. 8-4, ¶ 19 ("Mr. Rickes did not take action to review and acknowledge the MDRA in response to the notice email dated June 14, 2019, the first reminder notice email dated July 1, 2019, the second reminder notice dated July 12, 2019, or the third reminder notice dated July 22, 2019.").

[14] Rickes Decl., ¶ 6 ("Because I was unaware that Thermo Fisher's arbitration agreement existed, and had never seen the agreement or any of the e-mails Thermo

any action. Thermo Fisher subsequently "considered itself and Mr. Rickes to be bound by the MDRA."[15]

Years later, Thermo Fisher fired Rickes—along with nearly everyone else who was over 40—to make room for younger, cheaper employees.[16] When Rickes sued, Thermo Fisher asked him to dismiss his action and proceed in arbitration, which it contended he agreed to do. But Rickes never consented to arbitrate any claims against Thermo Fisher. He had never even seen the MDRA to which he allegedly agreed until litigation was underway.[17] Rickes thus refused, and the instant motion followed.[18]

## III. THERMO FISHER FAILED TO CARRY ITS BURDEN OF PROVING MUTUAL CONSENT TO ARBITRATE.

The federal policy favoring arbitration agreements only applies when determining the scope of arbitrable issues. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). It is inapplicable where, as here, the issue is whether the parties agreed to arbitrate in the first place. *Id.* Instead, courts apply "ordinary state-law principles that govern the formation of contracts to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

This Court must thus "look to California law regarding contracts." *Fleming v. Oliphant Fin., LLC*, 88 Cal. App. 5th 13, 21 (2023). While the existence of a contract under that law requires four essential elements (*id.* (*citing* Cal. Civ. Code §

---

Fisher states it sent to my company e-mail address, I did not know I could opt out of it. Had I received an arbitration agreement from Thermo Fisher, I would have read it and opted out of it. I would not knowingly waive my right to a trial by jury."

[15] ECF No. 8-4, ¶ 19.

[16] ECF No. 1-4, ¶¶ 1, 24–27.

[17] Rickes Decl., ¶ 4.

[18] Rickes and his counsel agree with Thermo Fisher's assertion that the Parties met and conferred at length before Defendant moved to compel arbitration. *See* ECF No. 8-1, at 15:10–14.

1550)), the Parties only disagree as to the presence of one—consent. A principle that "applies with particular force to provisions for arbitration." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 460 (2021). Thermo Fisher, as the party moving for arbitration, bears the burden of proving the key element of consent. *Norcia*, 845 F.3d at 1283. A burden it cannot carry with mere silence.

### A. Thermo Fisher's Failure To Secure Rickes's Acknowledgment Of Receipt Raises A Presumption Its Arbitration Agreement Was Never Delivered.

Under California law, a "contract is either express or implied." Cal. Civ. Code § 1619. Express and implied contracts, however, are "distinguishable only in the manifestation of assent." *Blaustein v. Burton*, 9 Cal. App. 3d 161, 184 (1970). At-issue here is an implied contract; one "manifested by conduct." Cal. Civ. Code § 1621. According to Thermo Fisher, Rickes's conduct (*i.e.* his failure to opt-out) manifested his acceptance of the Agreement. ECF No. 8-1, 19:14–18. However, "California courts have" been wary of finding "implied consent when the employer has required the employee to . . . acknowledge an arbitration agreement" but then fails to secure that acknowledgement. *Bayer v. Neiman Marcus Holdings, Inc.*, 582 F. App'x 711, 713 (9th Cir. 2014).

For example, in *Bayer*, the Ninth Circuit affirmed that an employee's "continued employment" could not "constitute[] implied consent to the Arbitration Agreement" where he refused to sign a required "Acknowledgment Form." 582 F. App'x at 714. Similarly, in *Pearson v. P.F. Chang's China Bistro*, the Southern District of California rejected the argument that a failure to opt-out could imply consent where "Defendant's practice was to deliver the [arbitration agreement] and receive, in return, a signed Acknowledgment Form," and no such form was ever received from the plaintiff. 2015 U.S. Dist. LEXIS 184157, at *17 (S.D. Cal. Feb.

23, 2015).[19] In fact, per *Pearson*, there is a "presumption . . . that the lack of a signed form means the [agreement] was not delivered to the employee." *Id.*

Thermo Fisher—like the employers in *Bayer* and *Pearson*—asked its workers to electronically sign an acknowledgment form after they received the Agreement. Its initial email even explained it needed that acknowledgment "so that we know you are making the decision regarding participating or not participating (i.e. opting out) knowingly and voluntarily." ECF No. 8-6, at 3. As Thermo Fisher admits, Rickes never signed that acknowledgement. ECF No. 8-4, ¶ 19. The presumption is thus that Rickes never received the Agreement; and, in turn, was never aware of a need to opt-out to avoid becoming bound. A presumption bolstered by Rickes's declaration affirming that lack of receipt. Rickes Decl., ¶ 4. Of course, even without that presumption, Thermo Fisher's motion still fails. Its only evidence of Rickes's assent is silence. And silence alone cannot evince consent.

**B. Thermo Fisher Cannot Use Rickes's Silence As Proof He Accepted Their Offer To Arbitrate As It Has No Evidence He Received Or Reviewed That Offer.**

California law has long recognized that an "offer made to another . . . cannot be turned into an agreement because the person to whom it is made or sent makes no reply." *Leslie v. Brown Bros., Inc.*, 208 Cal. 606, 621 (1929) (emphasis added); *see also Norcia*, 845 F.3d at 1285–86 ("Under California law, an offeree's inaction after receipt of an offer is generally insufficient to form a contract."). That remains the rule even where "the offer states that silence will be taken as consent." *Leslie*, 208 Cal. at 621. Thermo Fisher nevertheless attempts to use Rickes's silence to prove he consented to an agreement it admits he neither reviewed nor acknowledged.[20] That

---

[19] *Also available at* 2015 WL 12910914, at *5.

[20] *See* ECF No. 8-4, ¶ 13 ("Mr. Rickes did not take action to review and acknowledge the MDRA in response to the notice email dated June 14, 2019"), ¶ 15 ("Mr. Rickes did not take action to review and acknowledge the MDRA in response

is improper. Indeed, the Hon. Gonzalo P. Curiel recognized as much in *Gaines v. AT&T Mobility Servs., Ltd. Liab. Co.*, finding "silence alone is insufficient to constitute consent" to arbitrate absent affirmative proof of receipt. 424 F. Supp. 3d 1004, 1012 (S.D. Cal. 2019).

*Gaines* and the instant action share remarkably similar facts. In *Gaines*, Plaintiffs Branisha Newberry and Kenyata Martin sued Defendant AT&T, their employer, for alleged discrimination. 424 F. Supp. 3d, at 1008–09.[21] AT&T claimed both were subject to an arbitration agreement and moved to compel. *Id.*, 1009. While neither had signed such an agreement, AT&T alleged it sent "an email to Newberry and Martin" via "their company-issued email addresses, explaining that AT&T's Management Arbitration Agreement ('MAA') would apply to each of them unless they opted out within the following 60 days." *Id.*, 1009–10. Those e-mails "included a link to a web page containing the text of the MAA." *Id.*, 1010. And they were followed-up by "four reminder emails" regarding the arbitration agreement. *Id.* Neither Martin nor Newberry opted out; and both stated "they do not remember receiving or reviewing the original arbitration announcement or any of the four reminder announcements." *Id.* AT&T thus argued that "Newberry and Martin's failure to opt out and continued employment at AT&T are sufficient to establish their consent to be bound by the MAA, given their continued employment

---

to the notice email dated June 14, 2019 or the first reminder notice email dated July 1, 2019"), ¶ 17 ("Mr. Rickes did not take action to review and acknowledge the MDRA in response to the notice email dated June 14, 2019, the first reminder notice email dated July 1, 2019, or the second reminder notice dated July 12, 2019"), ¶ 19 ("Mr. Rickes did not take action to review and acknowledge the MDRA in response to the notice email dated June 14, 2019, the first reminder notice email dated July 1, 2019, the second reminder notice dated July 12, 2019, or the third reminder notice dated July 22, 2019").

[21] There were also three other plaintiffs; Dolores Gaines, Ryan Bagsby, and Mario Hall. *Id.* However, only Newberry and Martin were allegedly party to an arbitration agreement with AT&T.

at AT&T and AT&T's general policy requiring employees to check their email inboxes." *Id.*, 1011. This Court disagreed.

As Judge Curiel explained, the Ninth Circuit had previously recognized that, because the employer-employee relationship is somewhat unique, "an employee's failure to opt-out of an arbitration agreement can bind that employee to the arbitration agreement." 424 F. Supp. 3d, at 1012. However, each case so-recognizing also "noted the significance of [an] acknowledgment of receipt in circumstances where a party has failed to opt out." *Id.* That acknowledgement, after all, proved notice; making it "acceptable to infer the plaintiff's consent" from their failure to act, notwithstanding the usual rule that silence does not constitute acceptance of an offer. *Id.* But AT&T never secured any such acknowledgment from Newberry or Martin. As a result, Judge Curiel held "their silence alone is insufficient to constitute consent" to AT&T's arbitration agreement. *Id.* The same is true here.

Rickes does not recall receiving any emails from Thermo Fisher regarding the Agreement. Rickes Decl., ¶ 3. Thermo Fisher admits it has no evidence that Rickes read or clicked any links within those emails. ECF No. 8-4, ¶¶ 13–19. And Rickes has attested he has never even seen the Agreement until this litigation. Rickes Decl., ¶ 4. Thus, just like AT&T, Thermo Fisher's only evidence of Rickes's alleged consent to arbitrate are that it (1) sent messages to Rickes's company-provided email address announcing its new arbitration program and giving him a deadline to opt-out if he did not wish to participate; and (2) Rickes did not opt-out by that deadline. ECF No. 8-6, at 2–3. But that was not enough in *Gaines*. And it is not enough here. Thermo Fisher—like AT&T—has failed "to establish that" Rickes "consented to the" Agreement. *Gaines*, 424 F. Supp. 3d at 1013.

Of course, *Gaines* does not stand alone. Several courts within the Ninth Circuit have found that companies cannot infer consent to arbitration from a failure

to opt-out absent some evidence of notice. *See, e.g.*, *Hermosillo v. Davey Tree Surgery Co.*, 2018 U.S. Dist. LEXIS 117426, at *35 (N.D. Cal. July 13, 2018) ("Defendants have failed to carry their burden of proving . . . that Plaintiffs agreed to the Arbitration Agreement" by failing to opt-out "because Defendants have not established that Plaintiffs were aware of the Arbitration Agreement.");[22] *Sifuentes v. Dropbox, Inc.*, 2022 U.S. Dist. LEXIS 125273, at *11 (N.D. Cal. June 29, 2022) ("Even if the email" alerting a consumer to an arbitration program "alone could be considered 'reasonably conspicuous notice,' Plaintiff took no action to unambiguously manifest his assent");[23] *Pliszka v. Axos Bank*, 2024 U.S. Dist. LEXIS 165666, at *16 (S.D. Cal. Sep. 13, 2024) ("[A]bsent evidence that Plaintiff acknowledged receiving the change-of-terms e-mail, the Court declines to conclude that Plaintiff manifested his intent to use silence as a means of acceptance.").[24]

The simple fact is, under California law, inaction does not constitute acceptance. *Norcia*, 845 F.3d at 1284. There are, of course, "exceptions to this rule." *Id.* And, admittedly, an employee-employer relationship may create such an exception in limited circumstance, as this Court recognized in *Gaines*. 424 F. Supp. 3d at 1012. However, even when "there is an applicable exception," California's "courts have rejected the argument that an offeree's silence constitutes consent to a contract **<u>when the offeree reasonably did not know that an offer had been made</u>**." *Norcia*, 845 F.3d at 1285 (emphasis added). That is why, as this Court also recognized in *Gaines*, there needs to be some acknowledgment of receipt. 424 F. Supp. 3d at 1012–13.

Of course, that acknowledgment can take many forms. It can be a signed document literally acknowledging receipt of an arbitration agreement. *Id.* That is, in fact, what Thermo Fisher tried and fail to secure from Rickes. Or it can be some

[22] *Also available at* 2018 WL 3417505, at *11.
[23] *Also available at* 2022 WL 2673080, at *4.
[24] *Also available at* 2024 WL 4194338, at *6.

other affirmative evidence proving the recipient knew an offer was made. Indeed, such evidence was before each of the "[n]umerous courts" Thermo Fisher contends found that "an employee's failure to opt out manifests assent to an implied-in-fact arbitration agreement." ECF No. 8-1, 19:19–21; *see Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (explaining that, while silence does not typically constitute acceptance, the employee "acknowledged receipt of the [opt out arbitration agreement] in writing and was asked to review it within the course of his employment," and thus "the import of [his] silence was as apparent as if he signed his consent"); *Craig v. Brown & Root*, 84 Cal. App. 4th 416, 421 (2000) (noting the trial court concluded the plaintiff received notice of an arbitration program via mail after accepting and weighing conflicting evidence of receipt); *Shulak v. Guaranteed Rate, Inc.*, 2024 U.S. Dist. LEXIS 184230, at *10 (C.D. Cal. Apr. 10, 2024) (explaining the fact an employee forwarded an email containing an opt-out arbitration agreement to his co-worker evinced he "knew of the contents of the emails and corresponding document" despite claiming otherwise);[25] *Knepper v. Ogletree*, 2019 U.S. Dist. LEXIS 4980, at *15 (N.D. Cal. Jan. 9, 2019) (rejecting employee's claim that "she was unaware [her] sent her the Arbitration Agreement . . . and therefore her knowing assent is lacking" because the employer's records showed she "opened Email Notice 1 and *responded* to Email Notice 3").[26]

But there must be **something** to prove awareness of an offer. Thermo Fisher's briefing lacks that all-important something. Without it, Thermo Fisher cannot use Rickes's failure to opt-out as proof of consent; and the "absence of consent" is "decisive in denying the motion to compel arbitration." *Fleming*, 88 Cal. App. 5th at 21–22. Thermo Fisher's evidentiary deficiency is fatal to its motion to compel.

---

[25] *Also available at* 2024 WL 4404958, at *4.

[26] *Also available at* 2019 WL 144585, at *5.

## IV. CONCLUSION

Thermo Fisher has no evidence Rickes received, reviewed, or acknowledged its arbitration agreement. It cannot point to a single link clicked or form signed. Instead, it asks this Court to infer consent from silence—despite admitting it never secured Rickes's acknowledgment of receipt. That approach has been flatly rejected by California courts, including this one in *Gaines*. Thermo Fisher's motion rests on speculation about, rather than proof of, consent. And without consent, there is no contract. For the foregoing reasons, Rickes requests this Court deny Thermo Fisher's motion in its entirety.

DATED: June 13, 2025

**MOUTON LAW**
STACEY Y. MOUTON

By: */s/ Stacey Y. Mouton*
STACEY MOUTON
2150 Comstock #710754
San Diego, California 92111
Telephone: (760) 927-0647

Attorney for Plaintiff
SCOTT RICKES