UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT RICKES, an individual, on behalf of himself, all others similarly situated, and all other aggrieved employees,<br><br>                           Plaintiff,<br><br>v.<br><br>THERMO FISHER SCIENTIFIC INC., a Delaware corporation, and DOES 1-20, inclusive,<br><br>                           Defendant. | Case No.:  25-cv-00690-GPC-JLB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**[ECF No. 8]** |

Before the Court is Defendant Thermo Fisher Scientific Inc.'s ("Thermo Fisher") motion to compel arbitration of Plaintiff Scott Rickes ("Rickes") individual employment discrimination claims, dismiss Rickes' class claims, and stay the case pending completion of arbitration proceedings.  ECF No. 8.  On June 13, 2025, Rickes opposed the motion to compel arbitration.  ECF No. 11.  On June 27, 2025, Thermo Fisher filed a reply.  ECF No. 12.  For the reasons below, the Court DENIES Thermo Fisher's motion to compel arbitration.

## BACKGROUND

### I. Rickes' Employment at Thermo Fisher

Rickes alleges that Thermo Fisher discriminated against him by terminating his employment on the basis of his age. ECF No. 1-4 ("Compl.") ¶¶ 1, 23-27. Rickes worked at Thermo Fisher from October 15, 2012 until August 21, 2023 in various roles on Thermo Fisher's Product Design and User Experience team. *Id.* ¶ 23. Most recently, Rickes was the "Senior Manager Human Factors Engineering of [Thermo Fisher's] Experience Design Center team." *Id.* Rickes is over the age of 40. *Id.* ¶ 1.

Rickes was a commendable employee for nearly 11 years, but began to witness signs of age bias at the company, such as co-workers making ageist remarks like "okay boomer" during meetings, without any consequences for the remarks. *Id.* ¶¶ 23-24. In summer of 2023, Rickes heard rumors of a reduction in force at Thermo Fisher, which made him concerned about his job security. *Id.* ¶ 25. However, Thermo Fisher's senior director assured Rickes that he was indispensable and therefore need not worry about the reduction in force. *Id.* On June 22, 2023, Thermo Fisher notified Rickes that it would terminate his employment on August 21, 2023, which "came as a shock to Rickes." *Id.* ¶¶ 25-26.

Thermo Fisher stated that Rickes' termination was part of a mass layoff due to "a decrease in demand for COVID-related products and those who worked on those projects." *Id.* ¶ 26. While Rickes sometimes worked on COVID-related projects, he contends that "his focus was not on COVID-related products." *Id.* Rickes suspects that Thermo Fisher's underlying intent was "to terminate as many employees over the age of 40 as it could," *id.* ¶ 27, "to make room for younger employees," *id.* ¶ 1.

Rickes brings a putative class action on behalf of himself and two separate classes, which are defined as follows:

- Older Workers Class: "All persons who—at any time during the period beginning three years prior to the filing of this Complaint and ending on the date as determined by the Court (the "Class Period")—worked for Defendant in the State of California but were impacted by a reduction in force or other mass layoff, and were over 40 at the time of that job action." *Id.* ¶ 13.
- Wage Statement Class: "All persons who worked for Defendant in the State of California and were issued a wage statement at any time during the Class Period." *Id.*

Rickes brings the following causes of action on behalf of himself and the Older Workers Class: (1) discrimination on the basis of age in violation of the California Fair Employment and Housing Act, Government Code §§ 12940 *et seq.* ("FEHA"); (2) failure to prevent discrimination on the basis of age in violation of FEHA; and (3) wrongful termination in violation of public policy. *Id.* ¶¶ 28-49. Further, Rickes brings a claim for failure to provide accurate wage statements in violation of California Labor Code § 226 on behalf of himself and the Wage Statement Class. *Id.* ¶¶ 50-54. Rickes also brings an individual claim for failure to produce copies of wage statements in violation of California Labor Code § 226. *Id.* ¶¶ 55-63. Lastly, Rickes brings a representative action under the Labor Code Private Attorney General Act of 2004 (Cal. Lab. Code §§ 2698-2699) ("PAGA") for civil penalties on behalf of himself "and collectively on behalf of all other current or former employees." *Id.* ¶¶ 64-70.

## II.  The MDRA

At issue in this motion to compel arbitration is Thermo Fisher's Mutual Dispute Resolution Agreement ("MDRA"). *See* ECF No. 8-4, Declaration of Krisann Raposa ("Raposa Decl.") ¶ 1; *see also* ECF No. 8-5 (copy of MDRA). Thermo Fisher launched its MDRA program beginning in May 2019. Raposa Decl. ¶ 4. The MDRA provides that any dispute arising out of an employee's employment with Thermo Fisher or the

termination of their employment must "be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." ECF No. 8-5 at 2. The MDRA also provides that employees will waive their right to bring "any multi-plaintiff, class, or collective action." *Id.* at 3.

Thermo Fisher first notified its employees of the MDRA through an initial email[1] "that advised that action was required in the subject line and that contained a hyperlink to the MDRA in the body of the email." Raposa Decl. ¶ 5. The hyperlink launched a new window containing the full text of the MDRA "and provided a mechanism for electronically acknowledging the MDRA." *Id.* The initial email stressed that "[i]t is important to acknowledge that you have reviewed the [MDRA] so that we know you are making the decision regarding participating or not participating (i.e. opting out) knowingly and voluntarily." ECF No. 8-6 at 3. "If any employee failed to review the MDRA in response to the first email, Thermo Fisher sent up to three reminder emails in regular intervals[.]" Raposa Decl. ¶ 6.

The initial email informed employees that they had 45 days to opt out of the MDRA. ECF No. 8-6 at 3. The MDRA itself explained that "[a]rbitration is not a mandatory condition of your employment" and that employees could submit an opt out form within 45 days of receiving the initial email. ECF No. 8-5 at 4. The MDRA also stated that "[i]f you do not opt out of this Agreement within 45 days of you being advised that the agreement is available for you to review, you will be deemed to have agreed to the terms of the Agreement." *Id.*

Thermo Fisher sent Rickes an initial email informing him of the MDRA on June 14, 2019. Raposa Decl. ¶ 8; ECF No. 8-6. "Rickes did not take action to review and

---

[1] Thermo Fisher has a policy requiring employees to check their work emails, especially those "that required action and related to Thermo Fisher Policies." Raposa Decl. ¶ 7.

acknowledge the MDRA in response to the notice email dated June 14, 2019." Raposa Decl. ¶ 13. Rickes received three reminder emails on July 1, July 12, and July 22, 2019. *Id.* ¶¶ 13-19. Thermo Fisher searched Rickes' work email and located copies of all four emails in his inbox. *Id.* ¶ 9; *see* ECF Nos. 8-6, 8-7, 8-8, and 8-9. However, Thermo Fisher's records show that Rickes did not review MDRA or submit the acknowledgment form in response to any of the emails. Raposa Decl. ¶¶ 8, 13, 15, 17, 19. Rickes claims that he "received a high volume of daily emails" and that, at times, various factors prevented him from reviewing each email he received. ECF No. 11-1, Declaration of Scott Rickes ("Rickes Decl.") ¶ 2. Rickes does not remember receiving or reviewing any emails or communications regarding the MDRA. *Id.* ¶ 3. He claims that he "never received, and before this litigation had never seen, the" MDRA. *Id.* ¶ 4. He also states that, had he known of the MDRA and his opportunity to opt out, he would have opted out. *Id.* ¶ 6. However, Thermo Fisher considered itself and Rickes to be bound by the MDRA because Rickes failed to opt out and subsequently continued his employment with Thermo Fisher. Raposa Decl. ¶ 19.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, the district court's role is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and citation omitted). If a court answers both questions in the affirmative, then the FAA "requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)). Courts generally apply ordinary state-law contract principles when deciding whether the parties entered an arbitration agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). Further, the FAA allows courts to refuse to enforce arbitration agreements based on "generally applicable contract defenses, such as fraud, duress, or unconscionability," or any other ground that may exist at law or in equity for the revocation of a contract. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 507 (2018) (citation omitted).

## DISCUSSION

In its motion, Thermo Fisher argues that the MDRA is enforceable under both federal and California law, that the MDRA encompasses Rickes' claims and therefore compels arbitration of the claims, and that the MDRA is not unconscionable. ECF No. 8-1. Rickes only opposes the motion on one ground: he argues that Thermo Fisher cannot prove mutual assent to the MDRA, and thus that the parties did not form a valid agreement to arbitrate the claims. ECF No. 11 at 7-13. On reply, Thermo Fisher narrows its focus to the issue of mutual assent. *See generally* ECF No. 12. Accordingly, the primary question before the Court is whether a valid agreement to arbitrate Rickes' claims exists between the parties.

### I.     California Contract Law

"Generally, under California law, 'the essential elements for a contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient

cause or consideration.' " *Norcia*, 845 F.3d at 1284 (quoting *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999)) (alterations and internal quotation marks omitted).

Here, the parties only dispute the second element. "[A] party's acceptance of an agreement to arbitrate may be express or implied-in-fact[.]" *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000). Ordinarily, however, "silence or inaction does not constitute acceptance of an offer." *Norcia*, 845 F.3d at 1284 (quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1385 (1993)). There are exceptions to this rule, including "when the offeree has a duty to respond to an offer and fails to act in the face of this duty," or when the offeree "retains the benefit offered." *Id.* at 1285. But even where an exception applies, "courts have rejected the argument that an offeree's silence constitutes consent to a contract when the offeree reasonably did not know that an offer had been made." *Id.* (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972)).

## II.     Whether Rickes Consented to the MDRA

Thermo Fisher argues that because Rickes was required to check his email, received emails notifying him of the MDRA, and failed to opt out of the MDRA, Rickes impliedly consented to the MDRA. ECF No. 8-1 at 19-20; ECF No. 12 at 6-10. Rickes counters that because he never acknowledged receipt of the emails notifying him of the MDRA, his failure to opt out cannot form the basis of his consent to the MDRA, as there is no evidence that he knew of the MDRA. ECF No. 11 at 8-13.

This Court's decision in *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004 (S.D. Cal. 2019), is instructive here. There, the defendant moved to compel arbitration of plaintiffs' employment discrimination lawsuit, but the plaintiffs disputed whether they had consented to the arbitration agreement. *Id.* at 1009-11. The defendant argued that it sent an email to plaintiffs' work-issued email addresses explaining that its

new arbitration agreement would apply unless they opted out within 60 days. *Id.* at 1009-10. The emails provided instructions for opting out and included a link to a web page that contained the text of the arbitration agreement. *Id.* at 1010. The defendant sent plaintiffs four reminder emails. *Id.* None of the emails were returned as undeliverable and only one of the emails triggered an "out of office" reply. *Id.* However, the plaintiffs stated that they did not remember receiving or reviewing the emails or the agreement. *Id.* The defendant argued that since its "policy required employees to check their emails, and [plaintiffs] continued to work at AT&T after the opt-out period expired, [plaintiffs] consented to the" arbitration agreement. *Id.* at 1011.

This Court first noted that, generally, "an employee's failure to opt-out of an arbitration agreement can bind that employee[.]" *Id.* at 1012 (collecting Ninth Circuit cases). But, importantly, the Court also stated that "the Ninth Circuit has noted the significance of the acknowledgment of receipt in circumstances where a party has failed to opt out." *Id.* The Court discussed *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002), where the court "noted the plaintiff-employee's acknowledgment of his receipt of the arbitration agreement in writing" and the plaintiff's opportunity to consult counsel, as well as *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002), where "the employee similarly signed an acknowledgment of receipt of the arbitration agreement and opt-out form." *Gaines*, 424 F. Supp. 3d at 1012. Because, in *Gaines*, the defendant "failed to require and obtain [plaintiffs'] acknowledgment of their receipt of the" arbitration agreement, the plaintiffs' "silence alone is insufficient to constitute consent." *Id.*

The facts here are on all fours with the facts in *Gaines*. Thermo Fisher sent Rickes an email on June 14, 2019, which informed Rickes of the MDRA, that he had 45-days to opt-out of the MDRA, and contained a hyperlink to access the MDRA's text. Raposa Decl. ¶¶ 4-6, 8, 10; ECF No. 8-6. The MDRA's text contained another link to access an

acknowledgment form, ECF No. 8-5 at 5, and the June 14 email stated that "[i]t is important to acknowledge that you have reviewed the [MDRA] so that we know you are making the decision regarding participating or not participating (i.e. opting out) knowingly and voluntarily," ECF No. 8-6 at 3.  Thermo Fisher sent reminder emails to Rickes on July 1, July 12, and July 22, 2019, and there is no evidence that he reviewed the emails or the MDRA or submitted the acknowledgment form.  Raposa Decl. ¶¶ 13-19; *see also* ECF Nos. 8-7, 8-8, & 8-9.  While Thermo Fisher's records show that Rickes' email inbox contained the four emails, Raposa Decl. ¶ 9, Rickes denies that he ever saw the emails, reviewed the MDRA, or even knew that the MDRA existed before this litigation, Rickes Decl. ¶¶ 3-5.

Thus, like in *Gaines*, despite the emails Thermo Fisher sent to Rickes informing him of the MDRA, his right to opt-out, and the hyperlink containing the MDRA's text and an acknowledgment form, Thermo Fisher crucially failed to obtain an acknowledgment of receipt from Rickes.  Applying the Court's reasoning in *Gaines*, this absence of an acknowledgment of receipt is fatal to Thermo Fisher's argument that Rickes consented to the MDRA.  *Gaines*, 424 F. Supp. 3d at 1011-13.

This Court is not alone in adopting this line of reasoning.  More recently, a court in this district reached a similar conclusion in *Pliszka v. Axos Bank*, No. 24-cv-445-RSH-SBC, 2024 WL 4194338 (S.D. Cal. Sept. 13, 2024).  There, the defendant sent an email informing the plaintiff that it was updating its terms to include an arbitration provision and that the plaintiff had 30 days to opt out.  *Id.* at *5.  The plaintiff opened the email and continued to use his accounts, but the court found this insufficient without evidence of plaintiff's acknowledgment of receipt of the updated terms.  *Id.* at *6.  The court held that, "absent evidence that Plaintiff acknowledged receiving the change-of-terms e-mail, the Court declines to conclude that Plaintiff manifested his intent to use silence as a means of acceptance."  *Id.*  Other district courts in this circuit agree that silence without

evidence of acknowledgment is insufficient to bind an employee to an arbitration agreement. *See Pearson v. P.F. Chang's China Bistro, Inc.*, No. 13-cv-2009-JLS (MDD), 2015 WL 12910914, at *5 (S.D. Cal. Feb. 23, 2015) (finding "insufficient evidence to show that Plaintiff ever received a copy of Defendant's [arbitration policy] and that a valid arbitration agreement exists between the parties" where plaintiff did not recall seeing or signing the agreement or the acknowledgment form); *Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018 WL 3417505, at *10-11 (N.D. Cal. July 13, 2018) (finding that defendants did not establish plaintiffs' consent to the arbitration agreement where plaintiffs denied receiving copies of the agreement and defendant did not offer any documentation to support actual receipt, "such as a signed or initialed acknowledgment that Plaintiffs received any particular policies or agreements or any other kind of personnel record"); *Sifuentes v. Dropbox, Inc.*, No. 20-cv-07908-HSG, 2022 WL 2673080 (N.D. Cal. June 29, 2022) (finding that defendant failed to establish notice of arbitration agreement where plaintiff did not review the arbitration agreement or any emails regarding the agreement and where the defendant did not provide any evidence "to suggest that Plaintiff saw or read the email, such as a read receipt reflecting that Plaintiff opened the email").

Thermo Fisher relies on *Shulak v. Guaranteed Rate, Inc.*, No. 2:23-cv-00864-JWH-RAO, 2024 WL 4404958 (C.D. Cal. Apr. 10, 2024), to argue that there is a valid arbitration agreement "where the employer's communications disclose that an employee's failure to opt out manifests assent to an implied-in-fact arbitration agreement." ECF No. 12 at 6-7. In *Shulak*, the plaintiff claimed that he "never bothered to open or, much less, review the" arbitration agreement, but the plaintiff had forwarded the email regarding the arbitration agreement to his co-worker, and he and his co-worker discussed whether to sign the arbitration agreement. *Shulak*, 2024 WL 4404958, at *2. The plaintiff had 30 days to opt out of the arbitration agreement but did not timely opt

out. *Id.* The court reasoned that because the plaintiff did not deny receiving the emails and the arbitration agreement, and because the emails to his co-worker indicated knowledge of the content of the emails and agreement, there was sufficient evidence that the plaintiff consented to arbitration. *Id.* at *4.

The instant case is distinct from *Shulak* in several ways. Importantly, Rickes denies ever seeing the emails regarding the arbitration agreement and the arbitration agreement itself, and there is no evidence to show that he did see or review them. In *Shulak*, the plaintiff's emails to his coworker contradicted his assertion that he did not receive or review the emails and arbitration agreement. *Id.* However, here, there is no similar evidence that shows Rickes' knowledge of the emails and the arbitration agreement, such as conversations with his co-workers regarding the agreement, a signed acknowledgment form, or a read receipt on the emails. Thermo Fisher offers no proof that Rickes actually reviewed and consented to the agreement, and only presents evidence that Rickes' continued his employment and failed to opt out. However, absent evidence of Rickes' actual knowledge or acknowledgment of the arbitration agreement, this evidence alone is insufficient to show that Rickes consented. *See Gaines*, 424 F. Supp. 3d at 1012-13 (finding that, where the defendant "failed to require and obtain [plaintiffs'] acknowledgment of their receipt of the" arbitration agreement, plaintiffs' "silence alone is insufficient to constitute consent"); *see also Bayer v. Neiman Marcus Holdings, Inc.*, 582 F. App'x 711, 713-14 (9th Cir. 2014) (finding that while courts may imply consent from "continued employment after the unilateral imposition of an arbitration agreement by the employer," "California courts have not found implied consent when the employer has required the employee to sign or acknowledge an arbitration agreement") (collecting cases); *Norcia*, 845 F.3d at 1286 (finding that the parties did not form a valid agreement to arbitrate where the circumstances presented no exceptions to the general rule that silence does not constitute consent and the plaintiff "did not give any 'outward

1  manifestations of consent that would lead a reasonable person to believe the offeree has
2  assented to the agreement'") (citing *Knutson*, 771 F.3d at 565).

3       Thermo Fisher also argues that a court in this district found implied consent to an
4  arbitration agreement "under nearly identical circumstances" in *Ashirwad v. Charter*
5  *Commc'ns, LLC*, No. 21-cv-02101-AJB-DDL, 2023 WL 3564938 (S.D. Cal. Mar. 20,
6  2023). There, however, the plaintiffs did not dispute whether they had received or
7  reviewed the email announcements regarding the arbitration agreement, but rather they
8  argued that "the email announcement did not sufficiently incorporate by reference the
9  [arbitration agreement], and thus, cannot be the basis for a valid contract." *Id.* at *5; *see*
10 *also id.* at *4 (noting that two of the plaintiffs did not dispute that they "affirmatively
11 agreed to be bound to the" arbitration agreement). No such argument is present here.
12 Rather than arguing that the emails did not incorporate the MDRA by reference, Rickes
13 merely argues that there is no evidence that he reviewed or acknowledged the MDRA.
14 Thus, *Ashirwad* is inapposite here.

15      Lastly, Thermo Fisher argues that it provided Rickes inquiry or constructive notice
16 of the MDRA through the four emails, which is sufficient to find assent, even if Plaintiff
17 did not read the emails or the MDRA. ECF No. 12 at 7-10. Again, the Court addressed
18 similar circumstances in *Gaines*. There, the plaintiff argued that delivery in email form
19 did not constitute sufficient notice, but this Court "declined to find that email delivery
20 method alone is fatal to a motion to compel." *Gaines*, 424 F. Supp. 3d at 1011. The
21 Court nonetheless denied the motion to compel because of the lack of evidence of
22 consent. *Id.* at 1011-13. Similarly, here, regardless of whether there is sufficient notice,
23 Thermo Fisher must still prove that Rickes consented to the MDRA, such as with
24 evidence that he acknowledged receipt. Thus, Thermo Fisher's argument regarding
25 notice of the MDRA does not change the Court's conclusion.

Accordingly, the Court finds that the parties did not enter into a valid arbitration agreement because Rickes did not consent to the MDRA. Because no valid arbitration agreement exists between the parties, Thermo Fisher cannot compel arbitration of Rickes' claims.

## CONCLUSION

For the above reasons, the Court DENIES Thermo Fisher's motion to compel arbitration. The Court VACATES the hearing scheduled for July 18, 2025 pursuant to Local Rule 7.1(d)(1).

**IT IS SO ORDERED.**

Dated: July 14, 2025

Hon. Gonzalo P. Curiel
United States District Judge